## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **MICHAEL DARNELL OLIVER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:14-CV-2187-VEH-JHE** |
| | ) | |
| **WARDEN CHERYL PRICE, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

### I.    Introduction

The magistrate judge filed a report and recommendation on February 28, 2017. (Doc. 70). The magistrate judge recommended that defendants Iliff and Clum-Cordingley's motion for summary judgment on the plaintiff's Eighth Amendment medical claims be construed as a motion to dismiss for failure to exhaust administrative remedies under 42 U.S.C. § 1997e(a), and that the motion be granted and the claims dismissed without prejudice. (*Id.*). The magistrate judge further recommended that the Alabama Department of Corrections ("ADOC") defendants' motion for summary judgment be granted and the following claims be dismissed with prejudice:  (1) the plaintiff's Eighth Amendment medical claims against defendants

Sanders, Eads, Nath, Washington, and Barber; (2) the plaintiff's Eighth Amendment excessive force claims against defendants Miree, Baldwin, White, Snelson, Steed, and Voyles; (3) the plaintiff's Eighth Amendment conditions-of-confinement claims against defendants Nath, Eads, Sanders, and Steed; (4) the plaintiff's Eighth Amendment conditions-of-confinement claims against defendants Price, Miree, and White due to his placement in dry/reduced content cell status from September 10, 2014 to December 16, 2014; (5) the plaintiff's First Amendment access to courts and free speech claims against defendants Price and Miree; and (6) the plaintiff's Fourteenth Amendment due process claims against defendants Nath, Steed, and Miree. (*Id.*). On March 21, 2017, the court received the plaintiff's objections to the report and recommendation. (Doc. 73).

## II.     Standards

### A.     *De Novo* Review of Objections to Magistrate Judge's Findings

Before the court engages in its own analysis, it is important to emphasize that the magistrate judge is not making any <u>final</u> factual determinations or rulings on summary judgment, but rather only providing recommendations. Instead, the undersigned has reviewed *de novo* those portions of the record that relate to the parties' objections and separately and independently determined the correctness of any objected-to findings and recommendations.

This accepted process is set forth statutorily in 28 U.S.C. § 636, which states in part that:

**(b)(1)** Notwithstanding any provision of law to the contrary–

> **(A)** a judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action. A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law.

> **(B)** a judge may also designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any motion excepted in subparagraph (A), of applications for posttrial relief made by individuals convicted of criminal offenses and of prisoner petitions challenging conditions of confinement.

> **(C)** the magistrate judge shall file his proposed findings and recommendations under subparagraph (B) with the court and a copy shall forthwith be mailed to all parties.

Within ten days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the

court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b) (footnotes omitted) (emphasis by underlining added).

Regarding the *de novo* review requirement in particular, the district court's obligation is to independently review those portions of the record to which objections are made, as opposed to reviewing the entire record. *See, e.g., Washington v. Estelle*, 648 F.2d 276, 282 (5th Cir. 1981) ("Both in his brief and at oral argument, Washington maintains that the District Court erred in reviewing *de novo* only the objected to portion of the magistrate's findings, rather than reviewing the entire record *de novo*.");[1] *id.* ("Based on the language of this order, we are convinced that the District Judge sufficiently complied with the act which requires "'a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.'") (quoting 28 U.S.C. § 636(b)(1)(C)).[2]

_____

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

[2] In *Washington*, the district judge's order adopting the magistrate judge's proposed decision stated:

The Court having considered the Findings and Recommendations of the United States Magistrate filed on September 19, 1979, and the Court further having reviewed and considered the written objections filed by the Petitioner herein on October 2, 1979, and the Court having made a de novo review of the objections

Additionally, it is incumbent upon the parties to timely raise <u>any</u> objections that they may have regarding a magistrate judge's findings contained in the report and recommendation, as the failure to do so subsequently waives or abandons the issue even if such matter was presented at the magistrate judge level. *See, e.g., United States v. Pilati*, 627 F.3d 1360, 1365 (11th Cir. 2010) ("While Pilati raised the issue of not being convicted of a qualifying offense before the magistrate judge, <u>he did not raise this issue in his appeal to the district court. Thus, this argument has been waived or abandoned</u> by his failure to raise it on appeal to the district court.") (emphasis added).

## B.    Qualified Immunity

All defendants assert that qualified immunity bars the plaintiff's Eighth Amendment claims brought against them in their individual capacities. "The defense of qualified immunity completely protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable

---

<u>raised by the Petitioner</u> and the Court being of the opinion that the findings are correct and that the objections are without merit,

IT IS, THEREFORE, ORDERED that the Findings, Conclusions and Recommendations of the United States Magistrate are adopted.

648 F.2d at 282 (emphasis added).

person would have known.'" *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003) (internal quotation marks omitted) (quoting *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003)). "To receive qualified immunity, a government official first must prove that he was acting within his discretionary authority." *Id.*

This is a two-part test. Under the first step, "the defendant must [prove that he or she was] performing a function that, but for the alleged constitutional infirmity, would have fallen within his legitimate job description." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1266 (11th Cir. 2004). Next, the defendant must prove that he or she was "executing that job-related function." *Id.* at 1267. "Once a defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity." *Cottone*, 326 F.3d at 1358.[3]

Until 2009, the Supreme Court had required a two-part inquiry to determine the applicability of qualified immunity, as established by *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001), *modified in application by Pearson v. Callahan*, 555 U.S. 223, 227, 129 S. Ct. 808, 813, 172 L. Ed. 2d 565 (2009) (holding that "*Saucier* procedure should not be regarded as an inflexible

---

[3] In the context of this case, no dispute exists that the defendants were acting within the scope of their discretionary authority as either prison medical staff or prison officials.

requirement"). Under the *Saucier* test, "[t]he threshold inquiry a court must undertake in a qualified immunity analysis is whether [the] plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736, 122 S. Ct. 2508, 2513,153 L. Ed. 2d 666 (2002).

If, under the plaintiff's allegations, the defendants would have violated a constitutional right, "the next, sequential step is to ask whether the right was clearly established." *Cottone*, 326 F.3d at 1358 (quoting *Saucier*, 533 U.S. at 201, 121 S. Ct. at 2156). The "clearly established" requirement is designed to assure that officers have fair notice of the conduct which is proscribed. *Hope*, 536 U.S. at 739, 122 S. Ct. at 2515. This second inquiry ensures "that before they are subjected to suit, officers are on notice their conduct is unlawful." *Saucier*, 533 U.S. at 206, 121 S. Ct. at 2158.

The "unlawfulness must be apparent" under preexisting law.[4] *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039, 97 L. Ed. 2d 523 (1987) (citing *Malley v. Briggs*, 475 U.S. 335, 344-45, 106 S. Ct. 1092, 1097-98, 89 L. Ed. 2d 271 (1986)). Therefore, a temporal requirement exists related to this inquiry. More particularly, a plaintiff must show that a reasonable public officer would not have

---

[4] Only Supreme Court, Eleventh Circuit, and Alabama Supreme Court cases can "clearly establish" the law in this case. *See Thomas v. Roberts*, 323 F.3d 950, 953 (11th Cir. 2003) ("In this circuit, rights are 'clearly established' by decisions of the Supreme Court, this court, or the highest court of the state in which the case arose." (citing *Hamilton v. Cannon*, 80 F.3d 1525, 1532 n.7 (11th Cir. 1996))).

believed her actions to be lawful in light of law that was clearly established at the time of the purported violation. *See Anderson*, 483 U.S. at 639, 107 S. Ct. at 3038 ("[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action[,] assessed in light of the legal rules that were 'clearly established' <u>at the time</u> it was taken[.]") (emphasis added) (citation omitted); *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S. Ct. 596, 599, 160 L. Ed. 2d 583 (2004) ("If the law <u>at that time</u> did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation.") (emphasis added); *Brosseau*, 543 U.S. at 198, 125 S. Ct. at 599 ("Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law <u>at the time</u> of the conduct.") (emphasis added); *see also Johnson v. Clifton*, 74 F.3d 1087, 1093 (11th Cir. 1996) ("We know of no [preexisting] case which might have clearly told Clifton that he could not take the disciplinary action indicated by an investigation which was initiated before he even knew about the allegedly protected speech, and in circumstances where the public concern implication was doubtful.").

However, the *Saucier* framework was made non-mandatory by the Supreme Court in *Pearson*, 555 U.S. at 236, 129 S. Ct. at 818, in which the Court concluded

that, "while the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory." Thus, "judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.*

Despite the Supreme Court's modification of *Saucier*'s analytical process, the substantive analysis remains unchanged; an officer is entitled to qualified immunity protection as long as he "could have believed" his conduct was lawful. *Hunter v. Bryan*, 502 U.S. 224, 227, 112 S. Ct. 534, 536, 116 L. Ed. 2d 589 (1991). Therefore, to deny immunity, a plaintiff must affirmatively demonstrate that "no reasonable competent officer would have" acted as the public official did. *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 1096, 89 L. Ed. 2d 271 (1986).

### C.   Nominal Damages

"Under the [Prison Litigation Reform Act of 1995] and our caselaw, an incarcerated plaintiff cannot recover either compensatory or punitive damages for constitutional violations unless he can demonstrate a (more than de minimis) physical injury." *Brooks v. Warden*, 800 F.3d 1295, 1307 (11th Cir. 2015). However, the failure of a prisoner to substantiate a physical injury connected to a constitutional claim arising under the Eighth Amendment does not preclude a recovery of nominal

damages. As the Eleventh Circuit held in a conditions-of-confinement case involving a prisoner's stay at a hospital:

> Because Brooks has not alleged any physical injury resulting from his hospital stay, under the Prison Litigation Reform Act [PLRA], 42 U.S.C. § 1997e(e), he cannot recover compensatory or punitive damages. We do hold today, however, that <u>Brooks can proceed with his claim for nominal damages for a violation of his Eighth Amendment rights</u>, and we remand to the district court for further proceedings consistent with this opinion.

*Brooks*, 800 F.3d at 1298 (emphasis added); *see also id.* at 1308 ("Our conclusion that nominal damages may be sought by an inmate for constitutional injury is in accord with the determination made by every other sister circuit to consider this issue." (citing collection of decisions reached by the First, Second, Third, Fifth, Seventh, Eighth, Ninth, and Tenth Circuits)).

The Eleventh Circuit has explained that "nominal damages serve to 'vindicate [ ] deprivations of certain 'absolute' rights that are not shown to have caused actual injury.'" *Brooks*, 800 F.3d at 1308 (quoting *Carey v. Piphus*, 435 U.S. 247, 266, 98 S. Ct. 1042, 55 L. Ed. 2d 252 (1978)); *see Hughes v. Lott*, 350 F.3d 1157, 1162 (11th Cir. 2003) ("Nominal damages are appropriate if a plaintiff establishes a violation of a fundamental constitutional right, even if he cannot prove actual injury sufficient to entitle him to compensatory damages."); *see also Kyle v. Patterson*, 196 F.3d 695, 697 (7th Cir. 1999) ("[N]ominal damages, of which $1 is the norm, are an appropriate

means of vindicating rights whose deprivation has not caused actual, provable injury.") (*Kyle* cited with approval in *Quainoo v. City of Huntsville*, 611 F. App'x 953, 955 (11th Cir. 2015)).

While the plaintiff has not expressly asked for nominal damages in his Statement of Claim, he has listed numerous other categories of damages, including compensatory, and used the term "without limitations" in describing the relief that he is seeking from the court. (Doc. 1 at 4).[5] Because this court is obligated to liberally construe a *pro se* party's pleading, it finds that a broad reading of the plaintiff's Statement of Claim includes a request to award him nominal damages. *See, e.g., Boxer X v. Donald*, 169 F. App'x 555, 559 (11th Cir. 2006) ("We conclude that Boxer did seek nominal damages when his <u>complaint requested compensatory damages and 'any other relief the court deem[s] appropriate.</u>'") (emphasis added).

## III.   Analysis

### A.   Magistrate Judge's February 6, 2017 Order

Before considering the plaintiff's objections, the court must address the ADOC defendants' failure to comply with the magistrate judge's order directing them to make the contents of the video of the plaintiff's cell extraction available to the plaintiff for viewing. On February 6, 2017, the magistrate judge entered an order

---

[5]  All page references to Doc. 1 correspond with the court's CM/ECF numbering system.

noting that the ADOC defendants referenced a video of the plaintiff's September 11, 2014 cell extraction in their motion for summary judgment, but failed to submit the video to the court. (Doc. 67 at 1-2). The magistrate judge ordered the ADOC defendants to file a copy of the video with the court by February 8, 2017. (*Id*. at 2). The magistrate judge further ordered the ADOC defendants to make the contents of the video available to the plaintiff for viewing in a restricted and protected area by February 13, 2017. (*Id*.). Based on this order to allow the plaintiff to view the cell extraction video by February 13, 2017, the magistrate judge directed the plaintiff to supplement his response to the defendants' motion for summary judgment by February 20, 2017. (Doc. 69). The court did not receive a supplemental response from the plaintiff within this time, and the magistrate judge filed his report and recommendation on February 28, 2017. (Doc. 70).

On March 13, 2017, the court received a response from the plaintiff notifying the court that the ADOC defendants did not make the video available to him for viewing on or before February 13, 2017.[6] (Doc. 71 at 1-2). On March 17, 2017, the magistrate judge ordered the ADOC defendants to notify the court whether they complied with the February 6, 2017 order to make the video available to the plaintiff

---

[6] The plaintiff's response was dated February 18, 2017. (Doc. 71 at 3). The plaintiff contends the response was "intercepted on 2-21-2017 by Warden[s] Leon Bolling, Angela Miree, [and] Errol Pickens" and returned to him on March 7, 2017. (*Id*. at 1).

by February 13, 2017. (Doc. 72 at 1). On March 21, 2017, the ADOC defendants responded that, due to an oversight, the plaintiff did not view the video until February 23, 2017. (Doc. 74 at 1). Counsel for the ADOC defendants states that "[t]he most likely cause was a combination of a brief delay on counsel's part in getting the order to the warden and then a little longer delay on the prison staff in giving [the plaintiff] an opportunity to view the video." (*Id*.). The ADOC defendants' failure to comply with the magistrate judge's order to make the video available to the plaintiff for viewing by February 13, 2017, interfered with the plaintiff's ability to meet the magistrate judge's deadline to supplement his response to summary judgment by February 20, 2017. (Doc. 69). At the very least, the defendants should have notified the court that they could not comply with the magistrate judge's order within the time provided and requested an extension of time.

Notwithstanding the foregoing, the court finds the plaintiff has not been prejudiced by the delay in viewing the video. The plaintiff does not dispute that he was shown the video on or about February 23, 2017, and, therefore, has had sufficient time to file either a response or objections thereto. In particular, the plaintiff had nearly one month to challenge the video's authenticity or otherwise raise an objection related to its contents from the date on which he viewed the video to March 21, 2017, the date on which when he filed his objections (Doc. 73) to the magistrate judge's

report and recommendation. However, none of the plaintiff's objections concern the video. Additionally, since viewing the video, the plaintiff has not submitted any separate motion or other filing questioning its authenticity. With this preliminary procedural issue addressed, the court turns to the merits of plaintiff's objections.

**B.    Failure to Exhaust Administrative Remedies**

The plaintiff objects to the dismissal of his Eighth Amendment medical care claims against defendants Iliff and Clum-Cordingley for discontinuing his prescriptions for an Alvesco/Ciclesonide inhaler and Claritin. (Doc. 73 at 2, 3). The plaintiff states in his objections that he could not exhaust his administrative remedies because he was denied medical grievance forms and writing utensils after he was placed on dry/reduced content cell status on September 10, 2014. (*Id*. at 3).

Although the plaintiff maintains he was denied medical grievance forms and writing utensils after his reassignment to dry/reduced content cell status on September 10, 2014, the plaintiff fails to explain why he could not have filed a medical grievance shortly after his medications were discontinued on August 26, 2014. Indeed, the plaintiff does not claim he was denied medical grievance forms until after he was assigned to dry/reduced content cell status on September 10, 2014, nearly two weeks later. Furthermore, the plaintiff does not allege that he is currently being denied grievance forms. A copy of the medical grievance form attached to the

medical defendants' motion for summary judgment does not contain a deadline to file a claim. (Doc. 56-2 at 5).[7] Therefore, it does not appear that any future attempts to exhaust would be time-barred under the administrative grievance procedure. *See Bryant v. Rich*, 530 F.3d 1368, 1375 n.11 (11th Cir. 2008) ("We decide the case before us: one where dismissal was without prejudice and where neither party has evidenced that administrative remedies at [Georgia State Prison] are absolutely time barred or otherwise clearly infeasible."); *cf. also Johnson v. Meadows*, 418 F.3d 1152, 1157 (11th Cir. 2005) ("We agree with those circuits that have concluded that an untimely grievance does not satisfy the exhaustion requirement of the PLRA.").

Alternatively, even if the court were to find that the medical grievance procedure was unavailable to the plaintiff because he was denied access to medical grievance forms and writing utensils, his claims against defendants Iliff and Clum-Cordingley are, nonetheless, due to be dismissed on the merits. The United States Supreme Court has held that only deliberate indifference to a prisoner's serious medical needs is actionable under 42 U.S.C. § 1983. *See Estelle v. Gamble*, 429 U.S. 97, 104-05, 97 S. Ct. 285, 291, 50 L. Ed. 2d 251 (1976) ("This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs

_____

[7] All page references to Doc. 56-2 correspond with the court's CM/ECF numbering system.

or by prison guards in intentionally denying or delaying access to medical care or

intentionally interfering with the treatment once prescribed.") (footnotes omitted).

As the Eleventh Circuit has summarized the contours of this type of claim:

> To prevail on a claim of deliberate indifference to serious medical need in violation of the Fourteenth Amendment, a plaintiff must show: "(1) a serious medical need; (2) the defendant['s] deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009).

> "A serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Id.* at 1307 (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994))[, *overruled in part on other grounds by Hope v. Pelzer*, 536 U.S. 730, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002)]. In general, serious medical needs are those "requiring immediate medical attention." *See Hill*, 40 F.3d at 1190.

> To prove "deliberate indifference" to a serious medical need, a plaintiff must show "'(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence.'" *Townsend v. Jefferson Cnty.*, 601 F.3d 1152, 1158 (11th Cir. 2010) (quoting *Bozeman v. Orum*, 422 F.3d 1265, 1272 (11th Cir. 2005))[, *abrogated on other grounds by Kingsley v. Hendrickson*, __ U.S. __, 135 S. Ct. 2466, 2472, 192 L. Ed. 2d 416 (2015)].

*Youmans v. Gagnon*, 626 F.3d 557, 563-64 (11th Cir. 2010) (footnote omitted); *see

also Goebert v. Lee Cty.*, 510 F.3d 1312, 1326 (11th Cir. 2017) (providing that the

plaintiff must show that he had a serious medical need, that the defendants acted with

deliberate indifference in responding or failing to respond to that need, and that the

defendants' wrongful actions caused an injury)*.

The plaintiff declares in his verified Statement of Claim (*see* Doc. 1 at 4 ("I declare under penalty of perjury that the foregoing it true and correct.")) that defendant Clum-Cordingley failed to provide him with his prescriptions for a Ciclesonide/Alvesco inhaler and Claritin on August 25, 2014, and that he suffered chest pain and shortness of breath as a result. (Doc. 1 at 5). However, the medical evidence indicates the plaintiff was administered Cicelsonide/Alvesco on inhaler the evening of August 25, 2014. (*See* Doc. 56-1 at 23 ("Inmate Oliver M. was given his Alvesco . . . inhaler to use last night [*i.e.*, on August 25, 2014] and the Inmate refused to give her the inhaler back.")).[8] Additionally, the record is devoid of any evidence that the plaintiff complained or sought treatment for chest pain or shortness of breath due to Clum-Cordingley's alleged failure to administer the Ciclesonide/Alvesco inhaler to the plaintiff on this date.

The plaintiff does not dispute that his prescriptions for a Ciclesonide/Alvesco inhaler and Claritin were completely discontinued on August 26, 2014. (Doc. 56-1 at 18). While the plaintiff seeks to hold defendant Iliff and Clum-Cordingley liable, the plaintiff has provided no supporting facts in his verified Statement of Claim or

---

[8] All page references to Doc. 56-1 correspond with the court's CM/ECF numbering system.

verified response on summary judgment that defendants Iliff and Clum-Cordingley personally discontinued his prescriptions. The plaintiff asserts Iliff's name was on his prescription for the Ciclesonide/Alvesco inhaler, but he does not dispute defendant Iliff's affidavit testimony that he never provided medical care to the plaintiff. (Doc. 53-1 at 3, Iliff Aff. ¶¶ 4, 6-7).[9] Additionally, the plaintiff does not set forth any facts showing defendant Clum-Cordingley, in her capacity as a nurse, had the ability to discontinue his prescription or that she, in fact, did discontinue the prescription.

The plaintiff's medical records show that an individual with the name of "James Butler" electronically signed the plaintiff's medication order on August 26, 2014, at 2:34 p.m., which discontinued the plaintiff's prescriptions for both the Ciclesonide/Alvesco inhaler and Claritin. (Doc. 56-1 at 18). Also on August 26, 2014, a member of the medical staff noted during the plaintiff's chronic disease follow-up that his prescriptions for a Ciclesonide/Alvesco inhaler and Claritin would be discontinued. (Doc. 56-1 at 24). This document appears to have been signed by someone with the last name of "Butler" (or something similar to that), although the signature is not completely legible. (*Id.*). Regardless of the complete name, it is evident from this medical record that "B" is a first letter of either the last or first name

---

[9] All page references to Doc. 53-1 correspond with the court's CM/ECF numbering system.

of the person who signed the form and, therefore, that record also excludes defendant Timothy Iliff or defendant Roseanne Clum-Cordingley as the signatory. (*Id.*). The plaintiff has not disputed the authenticity of these medical records. Thus, there is inadequate evidence on summary judgment to support the plaintiff's claims that defendants Iliff and Clum-Cordingley were deliberately indifferent to his serious medical needs by failing to administer or by discontinuing his prescriptions for his Ciclesonide/Alvesco inhaler and Claritin. *Cf. Brown v. Smith*, *Bennett v. Parker*, and *Vicks v. Knight*, *infra* (recognizing that contradicting medical records can be used to discount a sworn statement by a *pro se* party). Therefore, in the alternative, defendants Iliff and Clum-Cordingley's motion for summary judgment is due to be granted and the plaintiff's claims against them are due to be dismissed with prejudice.[10]

## C.     Additional Medical Claims

In his objections, the plaintiff reasserts his claims that defendants Washington, Barber, and Nath violated his constitutional rights by failing to take him to three of his medical appointments. (Doc. 73 at 2). In reviewing the plaintiff's medical records, the magistrate found that these appointments were "weekly chronic case visits . . . for

---

[10]  The plaintiff maintains he was not provided his Albuterol inhaler until October 27, 2014, (Doc. 1 at 7); (Doc. 73 at 3-4), but fails to include facts that connect any specific defendant to this claim.

his asthma condition." (Doc. 70 at 29). The plaintiff declares within his verified Statement of Claim that defendant Washington failed to take him to a chronic care visit on August 26, 2014. (*Id.* at 6). Despite raising an objection about this medical appointment, the plaintiff does not dispute that his medical records indicate he was taken to be seen by medical staff on August 26, 2014, but he became belligerent during his appointment and refused to have his vital signs taken. (Doc. 56-1 at 22, 24). As a result of the plaintiff's lack of cooperation, officers were called and the plaintiff's appointment was rescheduled. (*Id.* at 22).

As discussed by the magistrate judge in his report and recommendation, the Eleventh Circuit has recognized that, under certain circumstances, it is appropriate to discount a sworn statement made by a *pro se* prisoner when that fact is made in a conclusory manner and other evidence contained in the summary judgment record contradicts the credibility of that statement. For example, in *Brown v. Smith*, 813 F.2d 1187 (11th Cir. 1987), the Eleventh Circuit discounted a plaintiff's affidavit described as containing "only a most conclusory allegation that his injury was serious" in light of a competing affidavit from the prison guard (directly involved in the incident and named as a defendant) that the plaintiff "was taken to the infirmary immediately after the altercation for the purpose of getting a 'body chart' and that he was at the infirmary for only 20 minutes." 813 F.3d at 1189. Additionally, when the

plaintiff filed a grievance after the incident, he "did not complain of any injury." *Id.*

The Eleventh Circuit "thus conclude[d] that [the plaintiff] suffered, at most, a minimal injury" *id.*, despite the different evidence offered by the plaintiff.

Similarly, in *Bennett v. Parker*, 898 F.2d 1530, 1534 (11th Cir. 1990), the Eleventh Circuit discounted a claim of serious injury as "only a conclusory allegation, unsupported by any physical evidence, medical records, or the corroborating testimony of witnesses[.]" While the disputed fact here relates to a missed appointment as opposed to an injury-related issue, the court, persuasively guided by *Brown* and *Bennett*, finds that it is appropriate to reject the plaintiff's declarative but nonetheless conclusory statement that defendant Washington failed to take him to his appointment on August 26, 2014, in light of the medical records that unambiguously reflect that the plaintiff was seen by the medical staff on August 26, 2014, and the plaintiff's failure to challenge the legitimacy of those records. *Cf. also Vicks v. Knight*, 380 F. App'x 847, 852 (11th Cir. 2010) (rejecting the plaintiff's version of the events as none of the record evidence supported it, "with the exception of his own affidavit"); *id.* ("Importantly, Vicks's August 2 and August 3 medical records demonstrated that at least two medical professionals examined him and could not identify any injury on his body."). Therefore, the court accepts the magistrate judge's recommendation that inadequate evidence has been presented to show a constitutional

violation taking place with respect to the plaintiff's August 26, 2014, appointment.

Alternatively, the court finds that, to the extent a material factual dispute exists over whether the plaintiff's constitutional rights were violated with respect to this appointment, summary judgment in favor defendant Washington is appropriate on qualified immunity grounds. More specifically, the plaintiff has not pointed to (and the court has not independently found) any clearly established law that would have put defendant Washington on fair notice that causing a prisoner to miss one weekly chronic care visit would constitute deliberate indifference to the plaintiff's serious medical needs, especially when the record lacks any indication that the plaintiff urgently needed to see medical staff because of complications from his asthma. *Cf. Youmans*, 626 F.3d at 546 ("The best response to a serious medical need is not required by federal law in these cases.); *id.* ("We conclude that neither the 'serious medical need' nor the 'deliberate indifference' element was established with such clarity in June 2007 that an objectively reasonable police officer in Defendant's place would have been on advance notice that Defendant's acts in this case would certainly violate the Constitution.").

Next, the plaintiff declares that defendants Barber and Nath failed to take him to medical appointments on September 2, 2014, and September 9, 2014. (Doc. 1 at

6); (Doc. 63 at 5).[11] The record is devoid of any evidence the plaintiff was injured or harmed as a result of missing these medical appointments. More specifically, the record shows that medical staff examined the plaintiff on September 5, 2014, and he did not report any injury due to missing his appointment three days before. (Doc. 50-2 at 13);[12] (Doc. 56-1 at 28).

The magistrate judge noted that the plaintiff refused his appointment on September 16, 2014, a week after his missed appointment on September 9, 2014. (Doc. 56-1 at 27). The plaintiff argues in his objections that he did not refuse this appointment as he did not sign the release of responsibility form. (Doc. 73 at 3); (Doc. 56-1 at 27, 38). However, two officers signed the form as witnesses to the fact the plaintiff refused his appointment with the physician and refused to sign the form. (Doc. 56-1 at 38). Nonetheless, and unlike the August 26, 2014, appointment, there

---

[11] The court has studied Docs. 63 and 64 which are docketed as separate filings from the plaintiff. However, after studying the Roman numerals used by the plaintiff in the lower-right corner of each hand-written page (as opposed to the plaintiff's attached Exhibits A-N (Doc. 63 at 15-27, 14), the court believes that some type of misfiling occurred on CM/ECF and that the plaintiff intended for all these records to be filed in as one document. In any event, on page 3 of Doc. 64, the plaintiff has verified his "ANSWER/RESPONSE" (Doc. 63 at 2) to the defendants' special report(s). (*See* Doc. 64 at 3 ("I affirm under penalty of perjury that the foregoing is true and correct . . . .")). Consequently, the court has treated the plaintiff's factual references in that document (Doc. 63 at 2-13); (Doc. 64 at 3-4) as declarative ones (just like the court has done with the verified facts contained in the plaintiff's complaint). Additionally, all page references to Docs. 63 and 64 correspond with the court's CM/ECF numbering system.

[12] All page references to Doc. 50-2 correspond with the court's CM/ECF numbering system.

is no documentation from the defendants that addresses the appointments that the plaintiff has declared he missed on September 2, 2014, and September 9, 2014.

Ultimately, the court does not reach the issue of whether a triable constitutional claim of deliberate indifference exists on account of these two missed appointments in September of 2014. Instead, the court finds that, to the extent a material factual dispute exists over whether the plaintiff's constitutional rights were violated with respect to these missed September appointments, summary judgment in favor of defendants Barber and Nath is appropriate on qualified immunity grounds consistent with the Eleventh Circuit's deliberate indifference reasoning in *Youmans* referenced above. More specifically, the plaintiff has not pointed to (and the court has not independently found) any clearly established law that would have put defendants Barber and Nath on fair warning that missing two weekly <u>chronic</u> care visits would constitute deliberate indifference to the plaintiff's serious medical needs, especially in the absence of an urgent complication related to the plaintiff's chronic asthma.

Based on the foregoing, defendants Washington, Barber, and Nath's motion for summary judgment on the plaintiff's Eighth Amendment medical claims is due to be granted and the claims are due to be dismissed with prejudice.

**D.    Excessive Force**

The Eight Amendment protects prisoners from the use of excessive force;

"however, [the] [p]laintiff must meet an intent requirement more stringent than *Farmer*'s deliberate-indifference standard: []he must prove that 'force was applied . . . maliciously and sadistically for the very purpose of causing harm.'" *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999) (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S. Ct. 1078, 1085 89 L. Ed. 2d 251 (1986)).

The plaintiff objects to the dismissal of his Eighth Amendment excessive force claims against defendants Miree, White, Baldwin, Steed, and Voyles based on events occurring during his cell extraction on September 11, 2014.[13] (Doc. 73 at 2). The plaintiff declares the defendants used excessive force against him when they extracted him from his cell, including "punch[ing], chok[ing], and threaten[ing] to kill [him] . . . ." (Doc. 1 at 7); (*see also* Doc. 73 at 2, 4 (same)). The plaintiff further affirms that he was beaten "off camera" and suffered a black eye (Doc. 63 at 7), and also alleges he endured a broken arm from the incident.[14] (Doc. 63 at 7); (*see also* Doc. 73 at 2

---

[13] The court notes the plaintiff did not specifically object to the dismissal of his excessive force claims against defendants Miree, Baldwin, White, and Snelson based on events allegedly occurring on September 10, 2014. (Doc. 73). Specifically, the plaintiff alleged the defendants and three other officers repeatedly punched him and rammed his head into a wall after conducting a cell search. (Doc. 1 at 6); (Doc. 63 at 5). The magistrate judge found that the plaintiff's claims were contradicted by other evidence in the record and that a reasonable factfinder could not believe the plaintiff's assertions. (Doc. 70 at 32-35).

[14] This is the first occasion that the plaintiff has complained that his arm was broken during the cell extraction on September 11, 2014. On November 14, 2016, the plaintiff filed a "Statement Concerning Claim," wherein he attempted to allege additional claims. (Doc. 35). While this "Statement Concerning Claim" is signed by the plaintiff, it is not done so under penalty of perjury. (Doc. 35 at 3). Regardless, the court notes that the plaintiff claimed in that

(same)). The plaintiff's sworn-to statements and broken-arm allegations are completely contradicted by video evidence, which is approximately fifty-six minutes long and shows <u>continuous</u> footage of officers prior to the cell extraction, the extraction itself, the plaintiff's medical examination, and his placement in Cell V-11A. (Doc. 68, Video). As the magistrate judge explained in his report and recommendation:

> Defendant White instructed Sergeant Taylor to assemble an extraction team to remove the plaintiff from his cell. (Doc. 50-2 at 28). The cell extraction was recorded. (Doc. 68, Video). Although "specific facts" pled in a *pro se* plaintiff's sworn complaint must be considered in opposition to summary judgment, *see Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986), in cases where there is video evidence, however, the court will accept the video's depiction over the opposing party's factual allegations where the video obviously contradicts the opposing party's version of the facts. *See Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1315 (11th Cir. 2010). "But, even where the entire series of events is recorded, video evidence is "not obviously contradictory [if] it fails to convey spoken words or tone . . . [or] fails to provide an unobstructed view of the events." *Id.*

(Doc. 70 at 37). Therefore, under *Gee*, the continuous video footage trumps the plaintiff's contrary statement about what transpired.

Moreover, in his objections, the plaintiff offers no supporting facts concerning

---

filing that his right arm was broken after officers allegedly assaulted him during a wholly separate incident on <u>January 27, 2015</u>. (Doc. 35 at 2). On November 18, 2016, the magistrate judge denied the plaintiff's attempt to amend his complaint in this manner because he did not "expressly seek leave of court to amend his complaint to add parties or claims" in conflict with a prior order. (Doc. 43 at 2).

this extraneous "off camera" beating. (Doc. 73 at 2). Additionally, there is no medical evidence that the plaintiff suffered a black eye or broken arm. At most, the plaintiff informed medical staff after the extraction that the left side of his face was "bruised." (Doc. 68, Video at 14:00-14:15). The plaintiff did not mention arm pain. (Doc. 68, Video). Additionally, the video shows the plaintiff talking to himself, reciting song lyrics, and quoting Bible verses, (Doc. 68, Video at 23:00-34:40), demonstrating that the plaintiff clearly is not in any serious pain. (*Id*.).

Therefore, in light of the contradictory continuous video proof, and consistent with *Gee*, there is insufficient evidence that defendants Miree, White, Baldwin, Steed, and Voyles used excessive force against the plaintiff during his cell extraction on September 11, 2014. Thus, the defendants' motion for summary judgment is due to be granted on the plaintiff's Eighth Amendment excessive force claims against them.

Alternatively, the court finds that to the extent a material factual dispute exists over whether the plaintiff's constitutional rights were violated with respect to the force used during the cell extraction on September 11, 2014, summary judgment in favor defendants Miree, White, Baldwin, Steed, and Voyles is appropriate on qualified immunity grounds. More specifically, the plaintiff has not pointed to (and the court has not independently found) any clearly established law that would have put defendants Miree, White, Baldwin, Steed, and Voyles on fair notice that the force

used in extracting the plaintiff from his cell on September 11, 2014, was excessive under the Eighth Amendment.

### E. Conditions of Confinement

"[T]he treatment that a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Brooks*, 800 F.3d at 1300 (internal quotation marks omitted) (quoting *Helling v. McKinney*, 509 U.S. 25, 31, 113 S. Ct. 2475, 125 L. Ed. 2d 22 (1993)). As the Eleventh Circuit has explained such a constitutional claim in *Brooks*:

> A prison official violates the Eighth Amendment when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." *Caldwell*, 748 F.3d at 1099 (emphasis omitted) (quoting *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003)) (internal quotation marks omitted). To prevail on such a claim brought under § 1983, the plaintiff must show: (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) a causal connection between the defendants' conduct and the Eighth Amendment violation. *See id.* The first element, a substantial risk of serious harm, is evaluated using an objective standard. *Id.* There must be a "strong likelihood" of injury, "rather than a mere possibility," before an official's failure to act can constitute deliberate indifference. *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (per curiam) (quoting *Edwards v. Gilbert*, 867 F.2d 1271, 1276 (11th Cir. 1989)).

*Brooks*, 800 F.3d at 1301.

### 1. Defendants Eads and Sanders

The plaintiff objects to the dismissal of his Eighth Amendment conditions-of-

confinement claims against defendants Eads and Sanders for placing handcuffs on his tray door and denying him breakfast on August 26, 2014, as declared in his Statement of Claim. (Doc. 1 at 5); (*see also* Doc. 63 at 4 (same)). The plaintiff does not swear he was harmed or injured due to the temporary placement of handcuffs on his tray door. Additionally, the plaintiff does not declare he suffered any harm or injury because he was denied breakfast. These isolated incidents fall short of the "extreme" conditions required to properly state a claim for relief for unconstitutional conditions-of-confinement. *See Chandler v. Crosby*, 379 F.3d 1278, 1298 (11th Cir. 2004) ("But '*extreme* deprivations are required to make out a conditions-of-confinement claim' under the Eighth Amendment." (emphasis added in *Chandler*) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995, 1000, 117 L. Ed. 2d 156 (1992))). Thus, defendants Eads and Sanders' motion for summary judgment on the plaintiff's conditions-of-confinement claims against them is due to be granted and those claims are due to be dismissed with prejudice.

Alternatively, the court finds that, to the extent a material factual dispute exists over whether the plaintiff's constitutional rights were violated with respect to how he was treated on August 26, 2014, summary judgment in favor defendants Eads and Sanders is appropriate on qualified immunity grounds. More specifically, the plaintiff has not pointed to (and the court has not independently found) any clearly established

law that would have put defendants Eads and Sanders on fair notice that their treatment of him on August 26, 2014, constituted an unconstitutionally-extreme deprivation.

## 2.    Dry/Reduced Content Cell Status

The plaintiff further objects to the dismissal of his Eighth Amendment conditions-of-confinement claims based on his reassignment to dry/reduced content cell status. (Doc. 73 at 1-5). In his Statement of Claim, the plaintiff declares that he was denied a mattress, linens, clothing,[15] showers, exercise, running water, access to his legal materials,[16] and fed only two sandwiches twice a day from September 10, 2014, until December 16, 2014, when he was transferred. (Doc. 1 at 6-7); (*see also* Doc. 73 at 2 (same)).

The plaintiff does not dispute that he has an extensive disciplinary history, including numerous assaults on ADOC employees, and was assigned to

---

[15]  The plaintiff declares multiple times that he was "naked" from September 10, 2014, to December 16, 2014. (Doc. 1 at 7); (Doc. 63 at 5, 7). However, in contradiction to these declarative statements, the plaintiff acknowledges in his objections to the magistrate judge's report and recommendation that he was provided boxers to wear. (Doc. 73 at 3).

[16]  The magistrate judge construed the plaintiff's claim that the defendants denied him access to his legal materials as a First Amendment access-to-courts claim. (Doc. 70 at 47-48). The magistrate judge concluded that the plaintiff did not allege how the denial of his legal material or access to the law library hindered his ability to pursue any legal claim. *Lewis v. Casey*, 518 U.S. 343, 351, 116 S. Ct. 2174, 2180, 135 L. Ed. 2d 606 (1996); *Wilson v. Blankenship*, 163 F.3d 1284, 1290-91 (11th Cir. 1998). Thus, the magistrate judge recommended dismissal of the plaintiff's access-to-courts claim. (Doc. 70 at 47-48). The plaintiff has not specifically objected to this recommendation. (Doc. 73).

administrative segregation due to his institutional behavior and mental health status. (Doc. 50-11, Price Aff. at 2; Doc. 50-3 at 12-17).[17] The plaintiff was assigned to dry/reduced content cell status on September 10, 2014, after inmates in his area threw feces on the floor. (Doc. 50-2 at 27); (*see also* Doc. 50-11 at 1 ("A review of the available documents revealed that on September 10, 2014, inmate Oliver [*i.e.*, the plaintiff] was one of the several inmates involved in throwing urine and feces within the unit.")). The plaintiff's placement in dry/reduced content cell status continued after he threw a milk carton full of feces and urine on Officer Steed on September 11, 2014. (Doc. 50-2 at 28). Based on the foregoing, the plaintiff's initial placement in administrative segregation on dry/reduced content cell status was justified and not a constitutional violation.

Alternatively, the court finds that, to the extent a material factual dispute exists over whether the plaintiff's constitutional rights were violated with respect to his initial placement on dry/reduced content cell status, summary judgment is appropriate on qualified immunity grounds. More specifically, the plaintiff has not pointed to (and the court has not independently found) any clearly established law that would have put any defendants on fair notice that placing him on dry/reduced content cell

---

[17] All page references to Doc. 50-3 correspond with the court's CM/ECF numbering system.

status after the feces/urine-throwing incident constituted an unconstitutionally-extreme deprivation.

However, in examining whether a material factual dispute exists over the plaintiff's continued placement in administrative segregation on dry/reduced content cell status for over three months violated his constitutional rights, the court reaches a different conclusion than the magistrate judge and, thus, rejects that portion of his report and recommendation. It is clear that prisoners can make out an Eighth Amendment confinement violation based on the totality of multiple conditions, rather than demonstrating that each objectionable condition individually is unconstitutional. *See Hamm v. DeKalb Cty.*, 774 F.2d 1567, 1575-76 (11th Cir. 1985) (citing *Ruiz v. Estelle*, 679 F.2d 1115, 1139-40 (5th Cir. 1982)), *amended in part and vacated in part on other grounds by* 688 F.2d 266 (5th Cir.). Instead, such claims are cognizable as long as the multiple conditions combine to deprive the prisoner of a specific human need. *See Gates v. Cook*, 376 F.3d 323, 333 (5th Cir. 2004) ("Conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise – for example, a low cell temperature at night combined with failure to issue blankets." (citing *Wilson v. Seiter*, 501 U.S. 294, 304, 111 S. Ct. 2321, 2327,

115 L. Ed. 2d 271 (1991))). Further, "[t]he Supreme Court has noted that 'the length of confinement cannot be ignored. . . . A filthy, overcrowded cell . . . might be tolerable for a few days and intolerably cruel for weeks or months." *Gates*, 376 F.3d at 333 (some internal quotation marks omitted) (quoting *Hutto v. Finney*, 437 U.S. 678, 686-87, 98 S. Ct. 2565, 57 L. Ed. 2d 522 (1978)).

Additionally, under ADOC's Standard Operating Procedure ("SOP") # 4-012, Dry/Reduced Content Cell, an inmate should not remain in dry/reduced content cell status beyond seventy-two hours, except that the Warden or Mental Health Staff may extend this time frame. (Doc. 50-2 at 46). Moreover, SOP # 4-012 provides that an inmate assigned to dry/reduced content cell must be afforded "a regular meal" served on disposable dinnerware at designated meal times and an opportunity to exercise and shower in accordance with the established exercise and shower policies for the Segregation Unit. (Doc. 50-2 at 48).

In his verified response to the ADOC's special report, the plaintiff states that he "was refuse[d] clothing and status change (conditions) by the Warden[s] Price and Angela Miree!"[18] (Doc. 63 at 8). While defendant Price has vaguely suggested in her

___

[18] In his response to summary judgment, the plaintiff declares that defendants Price, Miree, Baldwin, and White "allowed [their] staff to refuse the plaintiff three . . . meals a day." (Doc. 63 at 11). However, "[i]t is well established in this circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates 'on the basis of respondeat superior or vicarious liability.'" *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (quoting *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994)). Unlike defendants Price

affidavit that "[b]ecause of his institutional behavior and mental health status, placement in segregation was warranted as a result of his extensive disciplinary history" (Doc. 50-11, Price Aff. at 2), she does not directly respond to the verified details (*i.e.*, no mattress, no linens, no (or only limited) clothing, no showers, no exercise, no running water, and limited food) of the plaintiff's extended restricted confinement, disavow having knowledge of the plaintiff's restricted status that lasted longer than three months, or otherwise clarify why it was appropriate to continue that status for a period of time lasting over three months.[19] Similarly, defendant Miree's (Correctional Warden II) affidavit (Doc. 50-8 at 1-2 ¶ 1) substantiates why the plaintiff was initially placed in dry/reduced content cell status, but entirely omits any explanation why the plaintiff remained there for months even after he complained to both her and defendant Price about his ongoing restricted status.

Importantly, Defendants Price and Miree do not attach to their affidavit any documentation showing that defendant Price (or any Mental Health Staff) approved

---

and Miree, the plaintiff does not declare that defendants Baldwin and White personally participated or were made personally aware of the confinement actions about which he complains. Therefore, with the exception of defendants Price and Miree, the court finds that the record lacks a material factual dispute demonstrating a causal relationship between the actions of the remaining ADOC defendants and the plaintiff's three-month conditions-of-confinement claim. *Valdes v. Crosby*, 450 F.3d 1231, 1237 (11th Cir. 2006) (citing *Cottone*, 326 F.3d at 1360).

[19] Defendant Price further does not address in her affidavit the scope of her knowledge as to whether the plaintiff was only fed sandwiches twice a day and denied showers and exercise for this extended period of time.

extending the time for the plaintiff to remain in dry/reduced content cell status beyond 72 hours or reflecting that the plaintiff was appropriately monitored during this extended period of a heightened level of deprived confinement. For example, attached to SOP # 4-012 is a dry/reduced content cell observation/monitoring data form. (Doc. 50-2 at 50); (Doc. 50-3 at 1). The contents of this form indicate that it is used to monitor inmates assigned to dry/reduced content cell status every 30 minutes. The form also provides a place to document: (1) the reason the inmate was assigned to dry/reduced content cell status; (2) disposition after 72 hours; (3) further disposition after the second 72 hours; and (4) comments, referrals, etc. (Doc. 50-3 at 1); (*see also* Doc. 50-2 at 47-48 (describing procedures applicable to dry/reduced content cell status); *id.* at 50 (attaching "DRY/REDUCED CONTENT CELL OBSERVATION/MONITORING DATA FORM")).

Additionally, the prison maintains a segregation unit record sheet for prison staff to document a plaintiff's meals, showers, exercise, and medical visits.[20] (Doc. 50-18 at 1). While the court would expect that these types of records would normally be completed and maintained in the regular course of business, not one such form has been produced by defendants Price or Miree (or any other defendant) relating to the

---

[20] The defendants have only submitted a segregation unit record sheet for the plaintiff from August 3, 2014 to August 9, 2014. (Doc. 50-18 at 1).

plaintiff's stay in dry/reduced content cell status from September 10, 2014, to December 16, 2014.

Considered in combination, denying the plaintiff a mattress, linens, clothing (other than boxers), running water, showers, and exercise, and providing him only two sandwiches twice a day for a period of over three months,[21] presents a triable constitutional violation under the Eighth Amendment, *see Hamm v. DeKalb Cty.*, 774 F.2d 1567, 1575-76 (11th Cir. 1985) (citing *Ruiz v. Estelle*, 679 F.2d 1115, 1139-40 (5th Cir. 1982)), especially in light of the notice that the plaintiff has verified that he gave to defendants Price and Miree about his objectionable status and their failure to adequately explain, either in their affidavits or otherwise, why SOP # 4-012 was not complied with or introducing evidence confirming compliance with SOP # 4-012. Importantly, the gaps in the affidavits provided by defendants Price and Miree mean that the court can only speculate as to the adequacy of the reasoning for keeping the plaintiff on this restrictive status for over three months and that the court further is unable to confirm compliance with SOP # 4-012 and other monitoring requirements

---

[21] The court acknowledges that ADOC employee Omar Parker ("Officer Parker") has provided an affidavit generally indicating that the plaintiff "was permitted a mattress in good repair, a working toilet with sink and running water . . . ." (Doc. 50-10 at 1). Noticeably absent from Officer Parker's affidavit is <u>when</u> these items were made available to the plaintiff or any reference to the <u>period of time</u> in which the plaintiff was kept in the dry/reduced content cell status. Officer Parker also does not mention anything about the plaintiff's meals, showers, or exercise. Therefore, the court finds that Officer Parker's affidavit is inadequate to show the absence of a material disputed fact concerning this claim.

associated with the plaintiff's conditions during this extended period.

The court further rejects defendants Price and Miree's defense of qualified immunity to this claim. More specifically, and consistent with the long-standing authorities cited by the Eleventh Circuit in *Brooks* as well as the ADOC's own internal SOP # 4-012, defendants Price and Miree had fair notice that leaving the plaintiff in dry/reduced content cell status from September 10, 2014, to December 16, 2014, in the absence of an adequate explanation and/or documentation supporting this extended period of confinement without access (or having only limited access) to basic needs constituted an unconstitutionally-extreme deprivation in violation of the Eighth Amendment.

For example, as the *Brooks* court explained the clearly established Eighth Amendment law regarding unsanitary conditions:

> This Court, and the old Fifth Circuit, have long recognized a "well established" Eighth Amendment right "not to be confined ... in conditions lacking basic sanitation." *Chandler v. Baird*, 926 F.2d 1057, 1065–66 (11th Cir. 1991). In *Chandler v. Baird*, the plaintiff alleged that he had been deprived of toilet paper for three days, running water for two days, and was not provided with soap, a toothbrush, toothpaste, or bed linens. These conditions, combined with the inadequate heating of his cell, were sufficient to state an Eighth Amendment violation. *Id.* at 1063. We explained that "conditions that 'deprive inmates of the minimal civilized measure of life's necessities' are violative of the 'contemporary standard of decency'" that the Eighth Amendment demands. *Id.* at 1064 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981)). Many years earlier, in *Novak*

*v. Beto*, 453 F.2d 661 (5th Cir. 1971), the former Fifth Circuit surveyed Eighth Amendment prison conditions cases and concluded: "[T]here is a common thread that runs through all these cases.... That thread is the deprivation of basic elements of hygiene." *Id.* at 665. In reaching this conclusion, the Court cited with approval cases in which prisoners had successfully stated Eighth Amendment claims based on being placed in contact and close proximity with excrement—just as Brooks alleges he was. *See id.*

*Brooks*, 800 F.3d at 1303-04 (footnote omitted); *id.* at 1304 ("Indeed, every sister circuit (except the Federal Circuit) has recognized that the deprivation of basic sanitary conditions can constitute an Eighth Amendment violation." (citing collection of cases)); *see also Brooks*, 800 F.3d at 1306 (recognizing that cases not "involv[ing] precise circumstances" can still constitute clearly established law ); *id.* ("But '[e]xact factual identity with a previously decided case is not required.'" (quoting *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011))).

Further, the court finds the summary judgment record contains material factual disputes upon which defendants Price and Miree's qualified immunity defense turns, including the supervisory causal connection of how much either one knew about the plaintiff's conditions of confinement and when they knew it. *See, e.g., Johnson v. Breeden*, 280 F.3d 1308, 1318 (11th Cir. 2002) ("When the case goes to trial, the jury itself decides the issues of historical fact that are determinative of the qualified immunity defense, but the jury does not apply the law relating to qualified immunity

to those historical facts it finds; that is the court's duty." (citing *Stone v. Peacock*, 968 F.2d 1163, 1166 (11th Cir. 1992))), *overruled on other grounds by Wilkins v. Gaddy*, 559 U.S. 34, 34, 130 S. Ct. 1175, 1176, 175 L. Ed. 2d 995 (2010), *as recognized in Dixon v. Sutton*, No. 2:08-CV-745-WC, 2011 WL 1770295, at *14 n.4 (M.D. Ala. May 9, 2011); *Breeden*, 280 F.3d at 1318 ("It is important to recognize, however, that a defendant is entitled to have any evidentiary disputes upon which the qualified immunity defense turns decided by the jury so that the court can apply the jury's factual determinations to the law and enter a post-trial decision on the defense.").

However, the court agrees with the magistrate judge's finding that the plaintiff has failed to establish any physical, mental, or emotional injury as a result of his three-month confinement to dry/reduced content cell status. Therefore, as the plaintiff has not established any actual injury connected to this period of confinement, he is limited to pursuing only nominal damages against defendants Price and Miree on this three-month dry/reduced content cell claim. *See Brooks*, 800 F.3d at 1303 (holding that, in the absence of "a specific physical injury resulting from this Eighth Amendment [conditions-of-confinement] violation, [the plaintiff's] claims for compensatory and punitive damages are barred by the [PLRA]," but not his claim for nominal damages); *id.* at 1309 ("[W]e conclude [on a 12(b)(6) record] that [the plaintiff] may proceed with his § 1983 Eighth Amendment claim stemming from his

alleged mistreatment in Spalding County Hospital, but only for nominal damages.").

IV.    **Conclusion**

Having carefully considered the report and recommendation as well as the plaintiff's objections, and having reviewed *de novo* those portions of the record that relate to the plaintiff's objections, the magistrate judge's report and recommendation is hereby **ADOPTED IN PART**, **MODIFIED IN PART**, and **REJECTED IN PART**. Accordingly, defendants Iliff and Clum-Cordingley's motion for summary judgment on the plaintiff's Eighth Amendment medical claims is due to be construed as a motion to dismiss for failure to exhaust administrative remedies under 42 U.S.C. § 1997e(a) and is **GRANTED**; those claims are **HEREBY DISMISSED WITHOUT PREJUDICE**.[22] In the alternative, defendants Ilff and Clum-Cordingley's motion for summary judgment is **GRANTED** on the merits and the plaintiff's claims asserted against defendants Ilff and Clum-Cordingley are **HEREBY DISMISSED WITH PREJUDICE**.

Concerning the ADOC defendants' motion for summary judgment, the court

---

[22]    As the Eleventh Circuit explained in *Bryant*, "[b]ecause exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits, an exhaustion defense—as in [this] case—is not ordinarily the proper subject for a summary judgment; instead, it 'should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment.'" 530 F.3d at 1374-75 (emphasis added) (quoting *Ritza v. Int'l Longshoremen's & Warehousemen's Union*, 837 F.2d 365, 368-69 (9th Cir. 1988)).

finds that no genuine issue of material fact exists except with respect to the plaintiff's conditions-of-confinement claim of three months spent in a dry/reduced content cell as asserted against defendants Price and Miree. Accordingly, the ADOC defendants' motion for summary judgment is **DENIED** as to that claim against defendants Price and Miree and his damages as to that claim is limited to nominal damages. In all other respects, the ADOC defendants' motion for summary judgment is **GRANTED**.[23]

This case will be set by separate order for a jury trial only on the plaintiff's conditions-of-confinement claim against defendants Price and Miree based on the three months he was confined in a dry/reduced content cell. Further, plaintiff's damages for such claim will be limited to nominal damages.

**DONE** and **ORDERED** this 2nd day of May, 2017.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

---

[23] The Clerk is **DIRECTED** to terminate all defendants other than Price and Miree.